**Robert LEATHERS, Petitioner,**

v.

**BATH IRON WORKS & BIRMINGHAM FIRE INSURANCE, Respondents.**

No. 96–2176.

United States Court of Appeals, First Circuit.

Heard Aug. 1, 1997.

Decided Feb. 2, 1998.

Janmarie Toker, with whom McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, was on brief, for petitioner.

Nelson J. Larkins, with whom Preti, Flaherty, Beliveau & Pachios, Portland, ME, was on brief, for respondent Birmingham Fire Insurance.

Stephen Hessert, with whom Norman, Hanson & DeTroy, Portland, ME, was on brief, for respondent Bath Iron Works.

Before LYNCH, Circuit Judge, HILL,\* and JOHN R. GIBSON,\*\* Senior Circuit Judges.

---

\* Of the Eleventh Circuit, sitting by designation.

\*\* Of the Eighth Circuit, sitting by designation.

JOHN R. GIBSON, Senior Circuit Judge.

Robert Leathers appeals an Administrative Law Judge's June 2, 1994 order awarding benefits to Leathers under the Longshore and Harbor Workers' Compensation Act[1] for disability flowing from work-related carpal tunnel syndrome.[2] The ALJ concluded that the date of Leathers's injury was January 27, 1987. Leathers claims that March 27, 1992 is the correct date of his injury. In addition, Birmingham Fire appeals the ALJ's finding that it was the responsible insurance carrier for providing Leathers's compensation. We affirm.

Leathers began working at Bath Iron Works in 1981 in the Pneumatics Department. Leathers testified that pneumatic tools caused vibrations which he felt in his hands. Leathers testified that he used pneumatic tools eight hours a day, five days a week, from March 1981 through January 27, 1987. On that date, Leathers went to Bath Iron Works First Aid Office and reported that his hands were tingling and falling asleep. As a result of the visit, Bath Iron Works placed Leathers on light duty work restrictions which relieved Leathers from the regular use of pneumatic tools. In addition, Bath Iron Works referred Leathers to Dr. Andrew Walsh, who diagnosed Leathers as suffering from mild bilateral carpal tunnel syndrome.

In May 1987, Bath Iron Works offered Leathers, and Leathers accepted, a management job as a "lead man." As lead man, Leathers sparingly used pneumatic tools. In January 1989, Leathers was transferred to "production control coordinator," a management job not involving the use of pneumatic tools. Leathers testified that he transferred into these jobs because of the tingling and numbness in his hands. Further, because he transferred from labor to management, he lost union seniority rights and rights to overtime pay.

In May 1990, Dr. Bernard Vigna examined Leathers and, like Dr. Walsh, diagnosed Leathers as suffering from mild bilateral carpal tunnel syndrome resulting from Leathers's work in the Pneumatics Department.

In March 1992, Bath Iron Works eliminated the job of production control coordinator. Leathers attempted to transfer back to the Pneumatics Department. However, Bath Iron Works determined that Leathers was incapable of returning to his work in the Pneumatics Department and terminated Leathers. Leathers then brought this claim under the Longshore and Harbor Workers' Compensation Act.

The ALJ found Leathers's usual work was that of a laborer in the Pneumatics Department, and found Leathers to be totally disabled from that work as of March 27, 1992, the day Leathers was laid off. The ALJ further found that even though the onset of the impairment of Leathers's earning capacity did not occur until March 27, 1992, Leathers's injury was complete at the time he was removed from his labor job and therefore January 27, 1987 was the date of Leathers's injury.

In an occupational disease case, compensation is computed based upon the average weekly wage of the injured employee at the time of the injury. *See* 33 U.S.C. § 910 (1994). For occupational diseases that do not immediately result in disability,[3] the time of injury is the date the claimant becomes aware of the relationship between the employment, the disease, and the disability. *See* 33 U.S.C. § 910(i).

Leathers argues on appeal that the date of injury cannot be fixed until diagnosis, awareness of the work relatedness of the disease, and disability are all present. Accordingly, Leathers argues that the date of injury for compensation purposes must be

---

1.  *See* 33 U.S.C. §§ 901–50.

2.  Leathers appealed the decision of the ALJ to the Benefits Review Board. The appeal remained pending before the Benefits Review Board for more than one year. Pursuant to Public Law 104–134, since the Board took no action prior to September 12, 1996, the decision of the ALJ is considered affirmed by the Board

and is considered the final order of the Board for purposes of appellate review.

3.  "Disability means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10) (1994).

March 27, 1992, the date his disability began, and that it was inconsistent for the ALJ to hold January 27, 1987, to be the date of injury. In essence, Leathers argues that the ALJ erred as a matter of law.

The ALJ found that Leathers knew on January 27, 1987 that he suffered from carpal tunnel syndrome resulting from his use of pneumatic tools and that he could not continue working with pneumatic tools. These findings are supported by the evidence and satisfy the requirements of 33 U.S.C. § 910(i). The ALJ, in a detailed twenty-one page order, carefully distinguished the legal issues relating to the statute of limitations, wage rate for compensation purposes, and effective dates of insurance coverage. She made detailed factual analysis with respect to each of these issues. We discern no inconsistency or legal error in the ALJ's decision. We reject Leathers's argument that the date of injury for compensation purposes should be other than January 27, 1987, as found by the ALJ.

The ALJ also determined that because Birmingham Fire Insurance Company was Bath Iron Works's insurer on January 27, 1987, it was responsible for Leathers's medical benefits.

■ Birmingham Fire argues that the ALJ erred in finding it the responsible carrier, as the correct date of injury was March 27, 1992, when Bath Iron Works was self-insured. Bath Iron Works points out that Birmingham Fire concedes that it did not file a cross-appeal from the decision and order of the ALJ and may not now raise the issue. There is merit to this position. However, as we have concluded above, the ALJ did not err in determining the date of injury was January 27, 1987. Accordingly, we affirm the order of the ALJ.